# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RAPID CITY REGIONAL HOSPITAL** ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 06-1828 (GK)** |
| **v.** ) | |
| ) | |
| **MICHAEL O. LEAVITT, Secretary,** ) | |
| **U.S. Department of Health and Human** ) | |
| **Services** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff is not insensitive to, or unappreciative of (as the Defendant discussed in its Points And Authorities at 1-4), the heavy workload under which the Provider Reimbursement Review Board ("PRRB" or "the Board") operates, or to the complexity of the issues before it. That said, however, there are limits to the Board's ability to dismiss Appeals before it. The Board exceeds those limits and violates the Administrative Procedure Act when – as here – it dismisses an appeal because the provider fails to submit a Preliminary Position Paper to the Fiscal Intermediary ("Intermediary") unless there is an on-the-record indication from the Intermediary that the failure resulted in the Intermediary's inability to fulfill the obligations imposed upon it by regulation. For this reason, the Plaintiff respectfully requests that the Court enter judgment in its favor and issue an order requiring the PRRB to reinstate its Appeal.

**<u>ADDITIONAL DISCUSSION OF FACTS IN RESPONSE TO THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

The Plaintiff refers to, and incorporates by reference here, the Background and Statement of Undisputed Material Facts included in its own Motion for Summary Judgment, as well as its Reply to the Defendant's Response thereto and the Plaintiff's Response to the Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute (both of which are attached as Exhibits hereto). A repetition of the simple facts before the Court should not be necessary here; and instead, the Plaintiff simply addresses two important errors included in the Defendant's recitation of the facts (*Def's P&A at* 6-7), namely: 1) the Board's newly asserted reason for dismissing the Plaintiff's Appeal; and 2) the assertion that the Plaintiff never filed a motion to reinstate its appeal with the PRRB.

**<u>*A. The Board's Newly Asserted Reason for Dismissal*</u>**

The Plaintiff first addresses the new assertion that the Board dismissed the Plaintiff's appeal for, in addition to the Plaintiff's failure to timely file a Preliminary Position Paper to the Intermediary, its failure to comply with a request to submit copies of the final determination being appealed and the audit adjustment pages relating to the disputed issues to the Board. *See Def's P&A at 7.* As clarified in the Plaintiff's Response to the Defendant's Statement Of Genuine Facts as to Which There is No Genuine Issue (Para. 4), the PRRB issued two letters on May 9, 2006. One letter was entitled "Acknowledgment and Critical Due Dates," and the other letter was entitled "Request for

Information."[1] The PRRB's August 23, 2006 dismissal letter (*AR 2*) referred only to the Acknowledgement and Critical Due Dates letter and indicated that this letter had instructed the Plaintiff to file a Preliminary Position Paper with the Intermediary and to submit a letter certifying that the Preliminary Position Paper due date had been met along with a copy of the first page of the Preliminary Position Paper. The dismissal letter then stated: "It was noted that the Preliminary Position Paper was not submitted to the Intermediary and the required information was not submitted to the Board. Therefore the Board hereby closes this case and removes it from the docket."

Because the dismissal letter mentioned only the Plaintiff's compliance with the Acknowledgement and Critical Due Dates letter, the logical and reasonable inference is that the reference to "required information" in the dismissal was a reference to the certification and cover page that the Board had requested in the Acknowledgement and Critical Due Dates letter, and not to the documents identified in the "Request Letter." *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000) (the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. … Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the [fact finder] is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.") (internal citations and quotations omitted). As

---

[1] The Request for Information Letter Requested that the Provider submit copies of the final determination being appealed and the audit adjustment pages relating to the disputed issues to the Board. *AR 7.*

such, the Defendant's discussion of the "Request Letter" should be disregarded as an attempt to embellish the reasons for dismissing the Plaintiff's appeal with additional facts that the Board neither considered nor mentioned in its dismissal letter.

### B. Plaintiff Did file a Motion to Reinstate with the PRRB

The second misconception in the Defendant's Memorandum of Points and Authorities (*pp. 7-8*) and Statement of Material Facts as to which there is No Genuine Issue (*Para. 10*) is that the Plaintiff never filed a motion to reinstate its appeal with the Board. As the Plaintiff demonstrated in its Response to the Defendant's Statement Of Genuine Facts as to Which There is No Genuine Issue (*Para. 10*), the Administrative Record before the PRRB includes the motion to reinstate (*AR 10-28*) which was submitted to the Board on December 6, 2006. Therefore, to the extent that the Defendant's arguments rely on the assertion that the Plaintiff failed to file the motion to reinstate with the Board, those arguments must fail.

### LAW AND ARGUMENT

### I. The Defendant Was Not Entitled to Deference With Regard to the Dismissal Itself

The Defendant's first argument in response to the Plaintiff's Motion for Summary Judgment is that its decisions are entitled to substantial deference pursuant to *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984) and *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) and that as a result of this deference, its actions cannot be considered arbitrary or capricious. *See Def's P&A at 8-10 (Section I)*. The Plaintiff respectfully suggests that the Defendant has – partially at least – confused the standards applicable to its conduct. This is so because the Defendant blurs the distinction between the analysis of its <u>action</u> (dismissing the appeal) and <u>the rule</u> (permitting dismissal for failure to file a

Preliminary Position Paper) itself. *Compare* Plaintiff's Motion for Summary Judgment (Pl's MSJ) at 10-11 (discussing the arbitrary and capricious nature of the act of dismissal) *with* Pl's MSJ at 13-16 (targeting the PRRB's rule itself). *And See Def's P&A at 8-9.*

The Defendant relies on *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984) and *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) for the proposition that its interpretation of the regulations governing the conduct of PRRB appeals must be given "substantial deference" and "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *See Def's P&A at 8.* The Defendant's reliance on these landmark cases is inappropriate, however, when it comes to analyzing the act of dismissing the Plaintiff's appeal for failing to file a Preliminary Position Paper. This is because the deference discussed in *Chevron* and *Thomas Jefferson University* is only applicable when the dispute involves an Agency's statutory or regulatory interpretation and choice – relying on its own subject matter expertise – of one among many competing policy alternatives. The Supreme Court made this point plain in *Chevron* when it held:

> The principle of deference to administrative interpretations has been consistently followed by this Court <u>whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.</u> If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

*Chevron* 467 U.S. at 844-45 (<u>emphasis added</u>). *See Also Thomas Jefferson University*, 512 U.S. at 511 ("Our task is not to decide which among several competing interpretations best serves the regulatory purpose. … [B]road deference is all the more warranted when, as here, the regulation concerns a complex and highly technical

regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.")(internal citations omitted).

This case is distinct from both *Chevron* and *Thomas Jefferson University* because, here, the Plaintiff does not dispute that the PRRB has the statutory and regulatory authority to propound rules to manage its significant docket or even to dismiss appeals when it is appropriate to do so. Instead, part of the Plaintiff's challenge is that the Board exercised its authority in an arbitrary and capricious manner when it dismissed the Plaintiff's Appeal for failure to file a Preliminary Position Paper. Because the dispute here is not about "which among several competing interpretations best serves the regulatory purpose" (*Thomas Jefferson University*, 512 U.S. at 511), the deference owed the Agency under such cases in inapplicable here.

This dichotomy is similar to that explained in *OCONUS DOD Employee Rotation Action Group v. Cohen* 140 F. Supp.2d 37 (D.D.C. 2001) (J. Kessler) wherein the Court opined:

> *Chevron* is principally concerned with whether an agency has authority to act under a statute, and whether the agency's construction of the statute is faithful to its plain meaning or 'is based on a permissible construction of the statute.' *Chevron*, 467 U.S. at 842-843. Here, the authorizing statute gives DOD express authority to exercise its discretion to establish a rotation policy that facilitates the 'interchange of civilian employees' between posts in the United states and those abroad pursuant to 10 U.S.C. 1586(a). As such, this case does not pose a question of whether DOD 'permissibly interpreted' the authorizing statute … <u>The only issue here is whether DOD's exercise of its discretionary authority in creating a rotation policy that limits tours of duty to five years with few exceptions is reasonable. Accordingly, the question falls within the province of traditional arbitrary and capricious review.</u>

*Id.* at FN 7 (<u>emphasis added</u>).

The Plaintiff's claim in the case at bar that the dismissal itself was arbitrary and capricious relates to whether or not the Agency's decision to dismiss the Plaintiff's claim was "based on a consideration of the relevant factors," whether "the Agency has relied on factors which Congress has not intended it to consider," whether the Agency has "entirely failed to consider an important aspect of the problem," or whether there is any "rational connection between the facts found and the choices made." *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43 (cited by the Defendant in its discussion of the law at 9 and 12). With this clear understanding of the applicable legal standard, the Plaintiff reiterates the arguments it made in its own motion for summary judgment and incorporates them by reference.

Put briefly: (1) the only purpose for the Provider's Preliminary Position Paper that can be gleaned from the Board's instruction is to assist the Intermediary in developing its settlement position and drafting its own Preliminary Position Paper;[2] (2) The Preliminary Position Paper is not permitted to be filed with the Board; (3) the Board's instructions do not set any requirements for what is to be included in a Preliminary Position Paper; and (4) the Defendant has failed to identify any information not already included in the

---

[2]    In its Response to Plaintiff's Statement of Material Facts as to which There is No Dispute, the Defendant fails to support its claim that "the preliminary position paper fulfills, in part, the provider's obligation to provide the PRRB with information about its claims. *Para 5.* The Defendant additionally appears to concede the Plaintiff's point that the preliminary position paper is for the Intermediary's, and not the Board's benefit, when it asserts that "the preliminary position paper must be sufficient to inform the Intermediary of issues involved in the appeal so that the parties may attempt to reach a settlement of the dispute and so that the Intermediary may prepare its own preliminary position paper." *Id.*

Plaintiff's Appeal that the Intermediary required in order to fulfill its obligations under the regulations.[3]

As the Supreme Court opined in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983), an Agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." (emphasis added). *See Also, Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 753 (D.C. Cir. 2007) ("we will reverse an agency decision only if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.")(*relying, in part, on Motor Vehicle Mfrs. Ass'n, supra*). Because dismissing the Plaintiff's appeal for failure to provide a Preliminary Position Paper ignores the reasons for imposing the requirement of

---

[3]    In fact, the Defendant's Response to Plaintiff's Material Facts Not In Dispute indicates only "the Board and the Intermediary were entitled to receive a fuller description of the bases for the provider's position than was contained in the April 21, 2006 appeal letter." This of course does not elucidate what more (if anything) the Intermediary required at this early stage of the litigation that was not already included in the Appeal.

Moreover, neither the Defendant's own Statement of Material Facts as to which there is No Genuine Issue nor the Defendant's own Motion for Summary Judgment include any argument or assertion that the Plaintiff's failure to file a preliminary position paper frustrated the Intermediary in the execution of its obligations. *See, in particular, Def's P&A at 11 (Sec. III) and 13-14.*

a Preliminary Position Paper in the first place, the dismissal was arbitrary and capricious and should be reversed.

## II. The Board's Authority to Dismiss for Failure to file a *Preliminary* Position Paper is *Not* Well Established and Undisputed

The Defendant's next argument is that the Board's authority to dismiss an appeal because of a Provider's failure to meet deadlines is well established and undisputed and that its dismissal in this case is a rational exercise in the control of its docket. This argument extends through sections II and III of the Defendant's Points and Authorities (*Def's P&A at 10-13*).   Here, the Defendant has confused the relevant case law and attempted to justify its actions with decisions that are not applicable to the present dispute.

The Defendant cites to *Novacare v. Thompson* 357 F. Supp 2d 268 (D.D.C. 2005), *United Home Care*, No. 99-3123 (D.D.C. 2002), *High Country Home Heatlh v. Thompson*, 359 F.3d 1307, 1309 (10th Cir. 2004), *UHI, Inc. v. Thompson*, 250 F.3d 993, 995 (6th Cir. 2001), *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001), *Little Company of Mary Hospital v. Shalala*, No. 98-C-8232 (N.D. Ill. Mar. 30, 2000) for the proposition that courts have consistently found that the PRRB has the authority to dismiss an appeal where the Provider has missed a filing deadline.  *See Def's P&A at 10-11 (Section II)*. These cases are inapposite here, however, because they each involved the Provider's failure to file a *Final* Position Paper.[4] The Defendant cannot

---

[4] *United Home Care*, No. 99-3123 (D.D.C. 2002), slip op. at 4-5 (final position paper due September 1, 1999, "nevertheless, on September 1, 1999, Plaintiff failed to file its position papers with the Board."); *High Country Home Health v. Thompson*, 359 F.3d 1307, 1309 (10th Cir. 2004) ("both sides agree that the final position paper was not timely filed"); *UHI, Inc. v. Thompson*, 250 F.3d 993, 995 (6th Cir. 2001)(Appeal dismissed for failure to file final position paper which was due on October 1, 1996). *NovaCare v.*

explain and justify its conduct here by comparison and reference to dismissals for failure to file a *Final* position paper because the two present significantly different rationales and circumstances.

The arbitrary and capricious analysis requires the court to, among other things, ensure the Agency decision was "based on a consideration of the relevant factors," and determine whether "the Agency has relied on factors which Congress has not intended it to consider," whether the Agency has "entirely failed to consider an important aspect of the problem," or whether there is any "rational connection between the facts found and the choices made." *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43. Therefore, in order to determine whether dismissal for failure to file a *Final* Position Paper is arbitrary and capricious, the court would be required to examine the purpose of such a filing, and that examination reveals that the *Final* Position Paper has a much different purpose than the *Preliminary* Position Paper.

The purposes of Preliminary Position Papers and Final Position Papers differ significantly. As opposed to the Preliminary Position Paper, the purpose of which is to aid <u>the Intermediary</u> to initiate settlement and draft its own Preliminary Position Paper, the PRRB Instructions explain that the purpose of the Final Position Paper is to permit <u>the Board</u> to dismiss or ignore appeal issues that are not clearly identified, argued and substantiated:

---

*Thompson* 357 F. Supp 2d 268 (D.D.C. 2005)(rules "provide[] the Board with discretion to dismiss an appeal if the provider fails to timely file its final position paper.")(<u>emphasis added</u>).   *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001) (dismissal, after Provider failed to submit both the preliminary and final position papers); *Little Company of Mary Hospital v. Shalala*, No. 98-C-8232, slip opinion at 3 (N.D. Ill. Mar. 30, 2000) ("On August 24, 1998, Little Company had yet to file its final position papers and the PRRB dismissed the … appeal request").

> If your [final] position paper does not explain the facts or make any arguments about an issue in accordance with the following guidelines, the Board may find that the position paper submitted for this issue is unacceptable. In this case, it will dismiss the issue from the appeal. If you fail to address an issue, the Board will dismiss it from your appeal.

*Board Instruction, Part II at 5, governing Final Position Papers.*

Additionally, as opposed to the absolute lack of any requirements for the Preliminary Position Paper – as acknowledged by the Defendant at page 12 of its memorandum of points and authorities[5] – the Board's Instructions impose rigorous requirements (in both form and substance) on the Final Position Paper in order to ensure that the Provider has properly identified, argued and substantiated the issues on appeal. Specifically, the Board's Instructions require the Provider to: (1) "identify the provider by name and number, the Intermediary, the case number and the fiscal year end in dispute;" (2) "describe each issue and Intermediary adjustment in dispute;" (3) "state the relevant facts and present arguments setting forth the parties' positions for each issue [including] … a summary of the pertinent facts and circumstances, [citations to] the relevant … authorities;" (4) "identify the monetary amount, and explain its computation, for each item in dispute;" and (5) include "all documentary evidence and corroboration for the positions taken, as well as other items or statements that would assist the Board in its deliberations." *See Board Instructions Part II, p. 6-7.*

Because the Defendant cannot demonstrate that the same purposes are served by, and that the same standards apply to, both Preliminary Position Papers and Final Position Papers, its approved rationale for dismissal in cases where the provider fails to file its Final Position Paper is not applicable to this case. As such, the Defendant cannot justify

---

[5] Wherein the Defendant writes: "while the PRRB instructions do not provide explicit direction regarding the content of a preliminary position paper …"

the dismissal in the case at bar by reference to cases that uphold dismissal for a provider's failure to file a Final Position Paper, such as *NovaCare v. Thompson* 357 F. Supp 2d 268 (D.D.C. 2005), *United Home Care*, No. 99-3123 (D.D.C. 2002), *High Country Home Health v. Thompson*, 359 F.3d 1307, 1309 (10th Cir. 2004), *UHI, Inc. v. Thompson*, 250 F.3d 993, 995 (6th Cir. 2001), *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001), and *Little Company of Mary Hospital v. Shalala*, No. 98-C-8232 (N.D. Ill. Mar. 30, 2000).

The Defendant also argues that the Court should exercise a laissez faire approach to the PRRB's efforts to manage its docket. *See Def's P&A at 9.*[6] In response to this argument, the Plaintiff respectfully submits that the Defendant has misconstrued the D.C. Circuit Court of Appeals decisions of *NRDC v. SEC*, 606 F.2d 1031, 1055-56 (D.C. Cir. 1979) and *Vermont Yankee Nuclear Power Corp. v. Natural Defense Council*, 435 U.S. 519 (1978). The Defendant cites these cases for the proposition that the "Courts have made clear that an agency is allowed to be master of its own house … This division between the administrative and judicial provinces preserves a sphere of discretion for the agency, which alone is cognizant of the many demands on it, its limited resources, and the most effective structuring and timing of proceedings to resolve those competing demands." *See Def's P&A at 9.* Reading the Defendant's characterization of *NRDC v. SEC*, in particular the reference to "the most effective structuring and timing of proceedings," one could come to the conclusion that the decision requires courts in this Circuit to apply a hands-off approach to "how an administrative tribunal manages its

---

[6] Wherein the Defendant writes, "the law on substituting the court's judgment for that of the agency is particularly well decided where, as here, a Plaintiff asks a court to second-guess how an administrative tribunal manages its daunting docket." (citing *NRDC v. SEC*, 606 F.2d 1031, 1055-56 (D.C. Cir. 1979)).

daunting docket." *See Def's P&A at 9.* This is not the case, however, since the *NRDC v. SEC* has nothing to do with an Agency's efforts to manage its adjudication docket.

In *NRDC v. SEC,* the D.C. Circuit addressed two issues, the first being whether the SEC consulted the Council on Environmental Quality (CEQ) and appropriately considered environmental policy alternatives as mandated in the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321. *NRDC v. SEC*, 606 F.2d at 1004. The second issue was whether, in developing certain environmental policies under NEPA, the SEC's decision to hold public hearings, instead of adopting specific rules proposed by the CEQ, was arbitrary and capricious. *Id* at 1055 and FN 32. The language on which the Defendant has seized related to the second issue, whether it was arbitrary and capricious for the SEC not to adopt the rules proposed by the CEQ, but to instead continue to explore the issue by use of public hearings. *Id.* Because the citation relates to the manner in which the Agency chose to consider environmental policy alternatives, not to the manner in which it managed its hearing docket (*Id.* at 1055), it has no bearing on the case at bar.

*Vermont Yankee* is likewise inapplicable because that case related to whether or not the Atomic Energy Commission's rulemaking procedures were sufficient to pass Administrative Procedure Act muster. In that case, the Court held: "nothing in the APA, NEPA, the circumstances of this case, the nature of the issues being considered, past agency practice, or the statutory mandate under which the Commission operates permitted the court to review and overturn the rulemaking proceeding on the basis of the procedural devices employed (or not employed) by the Commission so long as the Commission employed at least the statutory minima, a matter about which there is no

doubt in this case." *Id.* at 548.  Like *NRDC v. SEC*, the Supreme Court's decision in *Vermont Yankee* does not support the Defendant's assertion that the Board should be permitted to run its docket in whatever manner it sees fit.

The uncontested facts remain that the Provider's Preliminary Position Paper is a device used to assist the Intermediary in developing a settlement position and crafting its own Preliminary Position Paper and that there is no evidence of record to demonstrate that the Intermediary was unable to fulfill these obligations as a result of the Plaintiff's oversight.[7] The Plaintiff focuses on this point – not to distract the Court with non-issues (as the Defendant has asserted at *Def's P&A at 12, 13*) – but because it is the keystone of the proper analysis of this case: the Defendant's action of dismissing the appeal must reflect a consideration of the relevant factors and be rationally connected to them in order to pass the arbitrary and capricious analysis. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43. Because there is no evidence in the record demonstrating that the Board's decision to dismiss the appeal was based on a determination that the Intermediary's efforts had been stymied, the Board's actions were not rationally connected to the relevant factors. As such, its action was arbitrary and capricious and should be reversed. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

### III. The Board's Rule Permitting Dismissal for Failure to file a *Preliminary* Position Paper is Arbitrary and Capricious and In Excess of Statutory Authority

---

[7] The only semblance of such an argument is found at *Def's P&A at 11-12,* where the Defendant writes "Since Plaintiff itself notices that the paper is intended to assist the Intermediary in developing its settlement position and drafting a position paper, requiring submission to the Intermediary and imposing consequences for failure to meet that requirement is entirely appropriate."

The last of the Defendant's argument to be addressed is whether the Board's instruction permitting dismissal for failure to file a Preliminary Position Paper is in excess of the authority granted to the Board by statute and regulation and/or arbitrary and capricious. This argument is addressed at pages 13-16 of the Plaintiff's Motion for Summary Judgment and in section IV (pp. 13-16) of the Defendant's Points and Authorities.

## A. The Rule is in Excess of the Board's Authority

With regard to whether the instruction permitting dismissal (as opposed to the act of dismissal itself) exceeded the Board's authority, the Plaintiff agrees that the Board's interpretation of the Agency's regulation is entitled to substantial deference. *See Thomas Jefferson University*, 512 U.S. at 511 ("We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.")(internal citations omitted). *See Also, Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 150 (U.S. 1991)("[i]n situations in which the meaning of regulatory language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable, … that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations.").

Consistent with this difficult showing, in its Motion for Summary Judgment, the Plaintiff demonstrated that the Secretary's regulations impose the obligation to ensure that the parties' prehearing positions are developed and that all attempts at settlement

have been exhausted <u>on the Fiscal Intermediary</u> and not the Provider. *See Pl's MSJ at 13-14.*

Specifically, 42 C.F.R. § 405.1853(a) states:

Upon notification that a request for Board hearing has been filed, **the Intermediary shall** forthwith review the materials submitted by the provider in accordance with § 405.1841.[8] Simultaneously, **the Intermediary shall** review the information which formed the basis for its determination of the amount of program reimbursement. Based on the findings of such review, **the Intermediary shall** expeditiously attempt to join with the provider in written stipulations setting forth the issues that said review has resolved and designating the issues that remain for Board resolution. Having obtained such stipulations and being satisfied that no further agreements can be negotiated, **the Intermediary shall** ensure that all available documentary evidence in support of each party's position is part of the record. Such evidence will ordinarily include a position paper from the provider, a position paper from the Intermediary, and any documents which support the issues addressed in the stipulations. These materials, in addition to all relevant documents which formed the basis for its determination of the amount of program reimbursement, shall be forwarded to the Board within 60 days after the date of the provider's request for Board review.

**(emphasis added)**

---

[8]  Section 405.1841 governs the Provider's request for appeal, and includes the substantive requirements imposed on the Provider in that regard.  The regulation does not require the Provider to submit a Preliminary Position Paper to the Intermediary. Section 405.1841 reads, in pertinent part:

The request for a Board hearing must be filed in writing with the Board within 180 days of the date the notice of the Intermediary's determination was mailed to the provider or, where notice of the determination was not timely rendered, within 180 days after the expiration of the period specified in § 405.1835(c). Such request for Board hearing must identify the aspects of the determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position. Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the Intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof.

The Secretary's regulations additionally place the burden of "expeditiously attempting to join with the provider in written stipulations setting forth the issues that said review has resolved and designating the issues that remain for Board resolution" on the Intermediary, not the Provider. *See* C.F.R. § 405.1853(a). In light of the foregoing and the clear burden placed on the Intermediary, the Plaintiff argues that when the Board punishes the Provider with dismissal for failure to provide a Preliminary Position Paper, the Board's rule does not "sensibly conform[] to the purpose and wording of the regulations." *See Martin*, 499 U.S. at 150. As such, the rule is in excess of the Board's authority.

The Defendant counters that such a holding would require the Intermediary to "wait interminably for the Plaintiff to come forward with information necessary to substantiate its claim and to allow the Intermediary to assess the merits of the appeal and the potential for settlement." *Def's P&A at 13.* This is not the case, since the Board may modify its instructions in such a way that does "sensibly conform to the purpose and wording of the regulation." *Id.*

Certainly, an adjudicating body such as the PRRB with a large backlog of cases can impose and enforce certain filing requirements and deadlines to aid it in processing its caseload. This is why the courts have upheld the Board's dismissal of appeals for a Provider's failure to file a <u>Final</u> Position Paper. *See, e.g. High Country Home Health v. Thompson* 359 F.3d 1307, 1311 (10th Cir. 2004) ("Strict procedural requirements like this one [the requirement of filing a <u>final</u> position paper] help manage a docket both by encouraging timely filing and by allowing the adjudicator to ignore late or improperly presented claims."); *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342, 348 (4th Cir.

2001) ("The Board's interest in the efficient management of its docket is supported by its ability to dismiss the appeals of providers who miss deadlines [specifically, the deadline to file a final position paper]."); *NovaCare v. Thompson,* 357 F. Supp. 2d 268, 272 (D.D.C. 2005) ("both the procedural requirement [of a Final Position Paper] itself, as well as the Department's application of it, are reasonable and necessary to the smooth functioning of the agency's appellate process."

The Plaintiff does not dispute the Board's ability to manage its docket by imposing and enforcing filing deadlines; instead it merely maintains that those deadlines must be consistent with the Agency's regulations. *See* 42 U.S.C. § 1395oo(f)(Board shall have full power and authority to make rules and establish procedures, <u>not inconsistent with the provisions of this title or regulations of the Secretary</u>, which are necessary or appropriate to carry out the provisions of this section.")(<u>emphasis added</u>); *and see Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 150 (U.S. 1991) ("reviewing court should give effect to the agency's interpretation so long as it is reasonable, … that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations.").

The Plaintiff suggests that the Board could amend its instructions to permit dismissal for failure to provide the Intermediary with a Preliminary Position Paper if the Record includes evidence from the Intermediary that the provider's failure to submit a Preliminary Position Paper left it unable to comply with its regulatory obligations.  The Plaintiff has proposed another alternative, relating to evidentiary inferences (at p. 16, FN 8 of its Motion for Summary Judgment) that would assist the Board in complying with

the 42 C.F.R. §405.1869, which only gives the Board the authority to "affirm, modify, or reverse a determination of an Intermediary."

**B. *The Instruction Permitting Dismissal is Arbitrary and Capricious***

With regard to the whether the instruction permitting dismissal is arbitrary and capricious, the standard is whether the instruction was "based on a consideration of the relevant factors," whether "the Agency has relied on factors which Congress has not intended it to consider," whether the Agency has "entirely failed to consider an important aspect of the problem," or whether there is any "rational connection between the facts found and the choices made." *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43. *See Also, Nat'l Ass'n for Home Care v. Shalala*, 135 F. Supp. 2d 161, 168-69 (D.D.C. 2001)(Sullivan, J.) ("Although APA arbitrary and capricious review is narrow and deferential, it is not a rubber stamp … In reviewing [the Agency's] explanation, a court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.")(quoting *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc*., 419 U.S. 281, 285, (1974)).

Considering the Board's instruction in light of the arbitrary and capricious standard reveals that the Board has failed to take into consideration the relevant factors and has failed to consider an important aspect of the problem. This is because, as discussed at length in the Plaintiff's Motion for Summary Judgment and above: 1) the purpose of the Preliminary Position Paper is to aid the Intermediary in initiating settlement efforts and developing its own Preliminary Position Paper: and 2) the Secretary's regulations (namely 42 C.F.R. § 405.1853) impose the obligations, to ensure that the parties' pre-hearing positions are developed and that all attempts at settlement

have been exhausted, <u>on the Fiscal Intermediary</u> and not the Provider. As a result, a rule permitting dismissal for failure to submit a Preliminary Position Paper to the Intermediary <u>in the absence of any indication from the Intermediary that such failure has prevented it from fulfilling its obligations</u>, ignores the Secretary's regulations and the stated purpose of the Preliminary Position Paper.

Because the instruction at issue here ignores these most crucial factors and considerations, the instruction should be declared unlawful and set aside pursuant to 5 U.S.C. § 706(2).

### IV. The Board's Failure to Reinstate the Plaintiff's Appeal was Clear Error

The Plaintiff lastly asserts that it was Arbitrary and Capricious for the Board not to reinstate the Plaintiff's Appeal in response to the Plaintiff's Motion to Reinstate.

As discussed in the Fact section above, the Defendant is simply wrong to claim that the Plaintiff did not file a Motion to Reinstate its Appeal with the Board. *See Def's P&A at 11, 15*; *and see Def's Undisputed Facts, Para 10.* To the contrary, the Administrative Record contains a copy of the Motion to Reinstate (*AR 10-28*), and that Motion was filed with the Board on December 6, 2006. *See AR 10.*

Because the Defendant's Motion for Summary Judgment indicates that the Board will not reinstate the Plaintiff's appeal because a Motion to Reinstate was never properly filed, the Board's decision reflects a clear error. As such, insofar as the Board's decision not to reinstate the Plaintiff's appeal is based on the Board's erroneous determination, the Board's actions are further demonstrated to be arbitrary and capricious and should be reversed. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43 (1983)(an Agency's action is

arbitrary and capricious "if the agency has … offered an explanation for its decision that runs counter to the evidence before the agency).

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff respectfully requests that, pursuant to 5 U.S.C. § 706(2), the Court:

1)    Set aside the Board's rule permitting dismissal for a Provider's failure to submit a Preliminary Position Paper to the Intermediary;

2)    Set aside the dismissal itself in this specific case

3)    Issue an order requiring the PRRB to reinstate the Plaintiff's appeal.

Respectfully Submitted
ALDERMAN, DEVORSETZ & HORA PLLC

/s/ Leslie D. Alderman III
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@adhlawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **RAPID CITY REGIONAL HOSPITAL** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 06-1828 (GK)** |
| **v.** | ) | |
| | ) | |
| **MICHAEL O. LEAVITT, Secretary,** | ) | |
| **U.S. Department of Health and Human** | ) | |
| **Services** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

<u>**PLAINTIFF'S REPLY TO THE DEFENDANT'S RESPONSE TO PLAINTIFF'S**</u>
<u>**STATEMENT OF UNDISPUTED FACTS**</u>

Now comes the plaintiff, Rapid City Regional Hospital, and for its Reply to the Defendant's Response to the Plaintiff's Statement of Undisputed Facts, states as follows:

5)    The Plaintiff disputes that the Defendant's assertion is a factual one. Instead, the Defendant is forwarding its own <u>legal conclusions</u>, which have no place in this document. Notwithstanding the foregoing, and in order to address the Defendant's assertion so as not to concede the point, the Plaintiff disputes that either 42 C.F.R. § 405.1841(a)(1) or 42 C.F.R. § 405.1853(a) provide any support for the Defendant's argument that the preliminary position paper "fulfills, in part, the provider's obligation to provide the intermediary <u>and the Provider Reimbursement Review Board</u> with information about its claims."    Neither 42 C.F.R. § 405.1841(a)(1) nor 42 C.F.R. § 405.1853(a) mention the preliminary position paper or its purpose.[1]    Instead, 42 C.F.R. §

---

[1] 42 C.F.R. § 405.1841(a)(1) reads:

The request for a Board hearing must be filed in writing with the Board within 180 days of the date the notice of the intermediary's determination

405.1841(a)(1) refers to elements to be included in the Provider's Appeal (as opposed to the preliminary position paper), while 42 C.F.R. § 405.1853(a) refers to the intermediary's pre-hearing obligations.

6-7)    Again, the Defendant asserts legal conclusions, as opposed to undisputed facts.  Again, in order not to be seen as conceding these points, the Plaintiff disputes that either 42 C.F.R. § 405.1841(a)(1) or 42 C.F.R. § 405.1853(a) provide any support for the

---

> was mailed to the provider or, where notice of the determination was not timely rendered, within 180 days after the expiration of the period specified in § 405.1835(c). Such request for Board hearing must identify the aspects of the determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position. Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof.

and 42 C.F.R. § 405.1853(a) reads:

> Upon notification that a request for Board hearing has been filed, the intermediary shall forthwith review the materials submitted by the provider in accordance with § 405.1841. Simultaneously, the intermediary shall review the information which formed the basis for its determination of the amount of program reimbursement. Based on the findings of such review, the intermediary shall expeditiously attempt to join with the provider in written stipulations setting forth the issues that said review has resolved and designating the issues that remain for Board resolution. Having obtained such stipulations and being satisfied that no further agreements can be negotiated, the intermediary shall ensure that all available documentary evidence in support of each party's position is part of the record. Such evidence will ordinarily include a position paper from the provider, a position paper from the intermediary, and any documents which support the issues addressed in the stipulations. These materials, in addition to all relevant documents which formed the basis for its determination of the amount of program reimbursement, shall be forwarded to the Board within 60 days after the date of the provider's request for Board review.

Defendant's argument that "while the preliminary position paper is primarily intended for use by the intermediary, <u>it is for the PRRB's use as well</u>."

8)    The Plaintiff disputes the Defendant's additional <u>legal conclusion</u> that "the Board and intermediary were entitled to receive a fuller description of the bases for the provider's position than was contained in the April 21, 2006." The Defendant has neither described what information the Board and intermediary lacked, nor has it supported its legal argument with any citation to the record or any law or regulation.

11-12) The Plaintiff disputes that the intermediary was deprived of any needed information and underscores that the Defendant has failed to explain, by citation to the record, the information it contends the intermediary was deprived of.  Nor has the Defendant identified by citation to the record how the intermediary was prejudiced by the Plaintiff's failure to submit a preliminary position paper.

14)    The Plaintiff disputes the <u>legal conclusion</u> that "Courts have consistently found that the PRRB has the authority to dismiss an appeal where the provider missed a filing deadline." The Plaintiff additionally disputes the relevance and application of the cited cases to the issue before the court since each of the cited cases dealt with a Provider's failure to file a <u>Final</u> Position Paper as opposed to a <u>Preliminary</u> Position Paper. *See United Home Care*, No. 99-3123 (D.D.C. 2002), slip op. at 4-5 (final position paper due September 1, 1999, "nevertheless, on September 1, 1999, Plaintiff failed to file its position papers with the Board."); *High Country Home Health v. Thompson*, 359 F.3d 1307, 1309 (10th Cir. 2004) ("both sides agree that the final position paper was not timely filed"); *UHI, Inc. v. Thompson*, 250 F.3d 993, 995 (6th Cir. 2001)(Appeal dismissed for failure to file final position paper which was due on October 1, 1996).

Respectfully Submitted
ALDERMAN & DEVORSETZ, HORA PLLC


/s/Leslie D. Alderman III (DC Bar No. 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@adhlawfirm.com