UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAPID CITY REGIONAL HOSPITAL,  :
                               :
            Plaintiff,         :
                               :
       v.                      :    Civil Action No. 06-1828 (GK)
                               :
KATHLEEN SEBELIUS,[1] Secretary :
of Health and Human Services,  :
                               :
            Defendant.         :

<u>MEMORANDUM OPINION</u>

Plaintiff Rapid City Regional Hospital ("Plaintiff" or "Rapid City") is a non-profit provider of inpatient hospital services located in South Dakota.  Plaintiff brings this action against Kathleen Sebelius in her official capacity as Secretary of the Department of Health and Human Services ("Defendant" or "HHS"), after Defendant dismissed Rapid City's administrative appeal for failure to comply with a filing deadline.  Pursuant to the Medicare Act, 42 U.S.C. § 1395 <u>et seq.</u>, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 <u>et seq.</u>, Rapid City challenges that decision. This matter is before the Court on Plaintiff's Motion for Summary Judgment [Dkt. No. 14] and Defendant's Motion for Summary Judgment [Dkt. No. 15].  Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of Health and Human Services Kathleen Sebelius is automatically substituted as defendant for former Secretary Michael O. Leavitt.

reasons stated below, Plaintiff's Motion for Summary Judgment is **denied** and Defendants' Motion for Summary Judgment is **granted.**

**I.   BACKGROUND**[2]

Part A of the Medicare Act provides for prospective payments to healthcare providers, such as Plaintiff, that offer inpatient care to Medicare beneficiaries. See 42 U.S.C. § 1395ww(d). Under this "prospective payment system" ("PPS"), hospitals receive a pre-determined payment that is calculated based on a complex statutory formula. Providers file annual cost reports that detail the "reasonable costs" they have incurred and the portion of those costs that are covered by Medicare. 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.50. HHS delegates Medicare administration to the Centers for Medicare and Medicaid Services ("CMS"). CMS often contracts out to "fiscal intermediaries" the task of auditing the providers' cost reports and creating a Notice of Program Reimbursement ("NPR"). 42 C.F.R. §§ 405.1803, 421.100.

Rapid City disagreed with the NPR issued in October of 2005 by the intermediary for Fiscal Year 1999, arguing that it erred in calculating the "disproportionate share" adjustment ("DSH"), one of the several payment adjustments that may be made pursuant to the PPS under 42 U.S.C. § 1395ww. The Medicare Act permits dissatisfied providers to bring their claims before the Provider

---

[2]    Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute.

Reimbursement Review Board ("PRRB" or "the Board").   42 U.S.C. § 1395oo(a).  In April of 2006, Plaintiff appealed its NPR for FY1999 to the PRRB.

The PRRB is authorized by statute to "make rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary, which are necessary or appropriate to carry out the provisions" of the statute.  <u>Id.</u> at § 1395oo(e). CMS issued PRRB Instructions in March of 2002, setting forth the Board's policies and guidelines.   <u>See</u> PRRB Instructions at Introduction.[3]

The Instructions require both the provider and the Intermediary to file preliminary and final position papers.  <u>Id.</u> at II.B.  The due dates for the provider's preliminary and final position papers are included in an Acknowledgment and Critical Due Dates letter sent from the PRRB to the provider.  <u>Id.</u> at I.C.I. Providers submit a preliminary position paper to the Intermediary-- not to the Board--which is tasked with reviewing the provider's position paper before engaging in a settlement meeting with the

---

[3]     Since the filing of this action, the PRRB Instructions in place have been modified in key respects. <u>See</u> PRRB Rules (July 1, 2009), <u>available at</u> http://www.cms.hhs.gov/PRRBReview/Downloads /PRRBRules2009_070109.pdf.  These updated Rules apply only to appeals pending or filed on or after July 1, 2009. <u>Id.</u> at Forward. For purposes of this Memorandum Opinion, the relevant text is the 2 0 0 2   P R R B   I n s t r u c t i o n s ,   <u>a v a i l a b l e   a t</u> http://www.cms.hhs.gov/PRRBReview/Downloads/PRRB_Instructions_Mar ch_03.pdf, which is the version that governed Plaintiff's 2006 appeal.  Therefore, the Court will rely on the Instructions as they existed in 2006.

provider and filing, if necessary, its own position paper with the Board.  Id. at II.B.I.  At this early stage of the appeal, the Board requires the provider to submit to it only the first page of its preliminary position paper and certification that a full copy was submitted to the Intermediary.  Id.

The PRRB Instructions state that if a provider "fail[s] to meet the preliminary position paper due date and fail[s] to supply the Board with the required documentation, the Board will dismiss [the provider's] appeal for failure to follow Board procedure." Id.[4]  In addition, the May 9, 2006, Acknowledgment Letter received by Plaintiff stated that "[y]ou (the provider) are responsible for pursuing your appeal in accordance with the Board's procedures, which are outlined in the Board's instructions."  AR at 4.  It continued, "[i]f you miss any of your due dates including meeting either position paper due date, the Board will dismiss your appeal."  Id.  Rapid City received notice in the same letter that "[t]he Board will not send a due date reminder."  Id.

Federal regulations merely require that the appeal be filed within 180 days of receipt of the Intermediary's NPR, and that the provider identify and explain its reasons for challenging the Intermediary's decision, 42 C.F.R. § 405.1841; therefore, the

---

[4]    Dismissal is not automatic if the intermediary misses a deadline; rather, the matter is referred to CMS and the hearing may continue.  PRRB Instructions at I.C.XIV; II.B.I.

-4-

position paper requirement was implemented by the PRRB alone, and not by statutory or regulatory text.

Rapid City filed a timely appeal on April 21, 2006. The Board received the letter of appeal on April 25, 2006. The letter contained information about the substance of Rapid City's challenges to the Intermediary's decision. On May 9, 2006, the PRRB acknowledged receipt of the appeal, and provided Plaintiff and the Intermediary with due dates for preliminary and final position papers. According to the May 9, 2006, letter from the PRRB, Rapid City's preliminary position paper was due on August 1, 2006. AR at 3. Plaintiff failed to file its preliminary position paper by that date, and thus, on August 23, 2006, the Board dismissed its appeal for failure to comply with PRRB procedures. Id. at 2

Rapid City eventually filed its preliminary position paper with the Intermediary, which was received on September 13, 2006. Id. at 1. On the same date, it supplied the Intermediary with a motion to reinstate its appeal. Id. The Board received a facsimile copy of the motion filed with the Intermediary. Id. at 10-28. The Board sent Rapid City a letter on December 29, 2006, informing Plaintiff that its motion to reinstate must be filed directly with the Board (as opposed to the Intermediary). AR at 8. The Board then dismissed Plaintiff's motion for reinstatement. Plaintiff disputes the claim that it failed to file its motion for reinstatement with the PRRB.

-5-

## II.  STANDARD OF REVIEW

The Medicare Act provides for judicial review of a final decision made by the Board.  42 U.S.C. § 1395oo(f)(1).  The Act instructs the reviewing court to apply the provisions of the APA. Id.  Under the APA, the agency decision is set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 702(2)(A).

"The arbitrary and capricious standard [of the APA] is a narrow standard of review."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  It is well established in our Circuit has held that "[t]his court's review is . . . highly deferential" and "we are 'not to substitute [our] judgment for that of the agency' but must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  Bloch v. Powell, 348 F.3d 1060, 1070 (D.C. Cir. 2003) (citations and internal quotation marks omitted); see also United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987).

If the "agency's reasons and policy choices . . . conform to 'certain minimal standards of rationality' . . . the [agency decision] is reasonable and must be upheld."  Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 521 (D.C. Cir. 1983) (citation omitted); see Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994).

Summary judgment will be granted when there is no genuine issue as to any material fact. <u>See</u> Fed. R. Civ. P. 56(c).  Since this case involves a challenge to a final administrative decision, the Court's review on summary judgment is limited to the administrative record.  <u>Holy Land Found. for Relief and Dev. v. Ashcroft</u>, 333 F.3d 156 (D.C. Cir. 2003) (citing <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973)); <u>Richards v. Immigration & Naturalization Serv.</u>, 554 F.2d 1173, 1177 (D.C. Cir. 1977)) ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.").

## III. ANALYSIS

### A. The PRRB's Decision to Dismiss Rapid City's Appeal for Failure to Meet a Filing Deadline Was Not Arbitrary or Capricious.

Plaintiff first argues that in dismissing the appeal, the Board acted arbitrarily and capriciously because it relied only on the procedural rule regarding the timely filing of a preliminary position paper.  In doing so, Rapid City contends, the Board failed to look beyond the preliminary paper rule to the purpose that it was meant to serve, i.e. to determine whether prior filings by Plaintiff sufficiently described its position for the Board.  In relying solely on the procedural rule, the PRRB allegedly failed to examine all of the factors relevant to its ultimate decision to

dismiss the appeal.  See Pl.'s Mot. for Summ. J. at 10-11 ("Pl.'s Mot.").

Plaintiff simultaneously claims that it is "not insensitive to, or unappreciative of . . . the heavy workload under which the [Board] operates, or to the complexity of the issues before it." Pl.'s Opp'n and Reply at 1 [Dkt. No. 20].  The Board hears thousands of appeals each year, and as a result of the volume and complexity of the appeals, faces a substantial backlog of cases. See High Country Home Health Inc. v. Thompson, 359 F.3d 1307, 1310 (10th Cir. 2004) (describing PRRB's burdensome case load); Rehab. Ass'n of Virginia, Inc. v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994) ("There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience.").  Plaintiff insists that despite its massive docket, "there are limits to the Board's ability to dismiss [a]ppeals before it."  Pl.'s Opp'n and Reply at 1.

The Board must provide a "rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The August 23, 2006, dismissal informed Plaintiff that "the preliminary position paper was not submitted to the Intermediary and the required information was not submitted to the Board." AR at 2.  As

a result, the Board "close[d] this case and remove[d] it from the docket." Id.

The PRRB relied on its rule that a Plaintiff must meet its filing deadlines or suffer dismissal of its appeal. See PRRB Instructions at II.B.I. Courts have time and again found that the crafting of such procedural rules is well within agency authority and expertise. See, e.g., Inova Alexandria Hosp. v. Shalala, 244 F.3d 342, 349 (4th Cir. 2000); Novacare, Inc. v. Thompson, 357 F. Supp. 2d 268, 273 (D.D.C. 2005); United Home Care v. Thompson, No. 99-3123, slip op. at 11 (D.D.C. Sept. 30, 2002). Rapid City does not dispute that it had notice of the rule, and that it violated it.[5] Pl.'s Mot. at 5-6. In dismissing the appeal, the PRRB considered the relevant factors before it, and rendered a reasonable decision based on those factors. Therefore, the Board's decision was not arbitrary or capricious. Cf. State Farm, 463 U.S. at 43. Several courts have reached the same conclusion when faced with similar facts. See UHI, Inc. v. Thompson, 250 F.3d 993, 996 (6th Cir. 2001); Novacare, 357 F. Supp. 2d at 271-72; United Home Care, slip op. at 15; Little Co. of Mary Hosp. and Health Care Ctrs. v. Shalala, No. 98-8232, slip op. at 9 (N.D. Ill. Mar. 30, 2000); Saint Joseph Hosp. and Healthcare Ctr. v. Shalala, No. 99-7775, slip op. at 10-11 (N.D. Ill. Dec. 11, 2000).

---

[5]    Plaintiff's explanation for missing the deadline is that there was a "miscommunication between the hospital and its reimbursement consultant." Pl.'s Mot. at 5.

Additionally, an appellate court addressed directly the counter-argument raised by Plaintiff, that the Board could have and should have relied on other submissions by Rapid City as a substitute for the preliminary position paper.  Plaintiff argues that in failing to look behind the purpose of the position paper rule, the Board's decision did not consider all the relevant factors.   In High Country, the Tenth Circuit rejected the provider's "argument that the final position paper was unnecessary because [the provider's] arguments could be gleaned from other" filings, including the preliminary position paper.  359 F. 3d at 1313.  The court found that, "[t]he PRRB was under no duty to hunt around in the record . . . in an attempt to discern the nature of High Country's legal claims," even if such a search would have yielded the same information that was supposed to be filed in the tardy position paper.   Id.  Accordingly, the Tenth Circuit held that dismissal was not arbitrary or capricious.  The Court concurs with the reasoning and outcome of High Country.

Rapid City attempts to salvage its arguments by distinguishing this case law.  In doing so, it relies on distinctions without differences.  Plaintiff's argument is that the above cases dealt with the late filing of final position papers, whose function is entirely different from that of preliminary position papers.  Pl.'s Opp'n and Reply at 9-12.  Plaintiff implies that the requirement to

file the preliminary position paper is redundant in this case, as all of the information was already before the Board.  Id.

The decisions, however, do not rely on the unique nature of a final position paper to affirm the Board's dismissals.  See, e.g., Novacare, 357 F.2d at 271 (citing to UHI, 250 F.3d at 996-97) (affirming dismissal for failure to submit "the required paperwork"); Inova, 244 F.3d at 345 (affirming dismissal where provider failed to file either position paper).  Rather, the cases rely solely on the more general proposition that legitimate procedural rules can be relied upon to control the Board's docket by dismissing appeals that are not timely filed.  Id.; see also High Country, 359 F.3d at 1311 (discussing utility of strict procedural deadlines and need for Board to manage docket); cf. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 506-07 (1994) (noting that "substantial deference" granted to agency's interpretation of own regulations); Dillmon v. Nat'l Transp. Safety Bd., 588 F.3d 1085, 1089 (D.C. Cir. 2009) (observing that arbitrary and capricious review is deferential).

Plaintiffs would have the Court look behind the rule to determine whether the purpose of the preliminary position paper requirement was met by earlier submissions.  As discussed further below, the procedural default rule was a legitimate exercise of agency authority, and was necessary to assist the Board in controlling its docket.  High Country, 359 F.3d at 1312 (explaining

need for deadlines); <u>Novacare</u>, 357 F. Supp. 2d at 272 (stressing importance of "smooth functioning of agency's appellate process") (citation omitted).  It is completely rational and reasonable for a court, or agency, to impose deadlines, and to interpret them strictly and uniformly.  <u>See</u> <u>Hooper v. Nat'l Transp. Safety Bd.</u>, 841 F.2d 1150, 1151 n.2 (D.C. Cir. 1988) ("We do not, of course, hold that the [Board] has no power to enforce its [procedural default] rule as strictly as it pleases. . . .").  Consistent with the authority and need to promulgate such rules, the Court cannot credit Plaintiff's suggestion that the Board may not dismiss the appeal for a procedural default because the regulations only allow it to "affirm, modify, or reverse a determination of an intermediary," 42 C.F.R. § 405.1869.  <u>See</u> Pl.'s Mot. at 15-16.  The Board has the authority to manage its docket and dismiss appeals in the event of procedural defaults.  <u>See</u> <u>United Home Care</u>, slip op. at 9.

## B.   PRRB Instructions Did Not Exceed the Board's Statutory Authority and Were Not Inconsistent with HHS Regulations.

Rapid City also contends that the rule allowing for dismissal improperly shifts the burden for developing pre-hearing positions from the intermediary to the provider.  In doing so, Plaintiff maintains, the rule runs afoul of regulations that require the Intermediary to gather pre-hearing information and present it to the PRRB.  <u>See</u> 42 C.F.R. § 405.1853(a).  Plaintiff argues that because the Board was permitted by Congress to formulate rules that

were not "inconsistent with regulations . . . of the Secretary," 42 U.S.C. § 1395oo(e), the dismissal rule exceeds the Board's statutory authority. Pl.'s Mot. at 14-15.

The regulations do assign the Intermediary certain duties, including assembling evidence, attempting to meet with the provider, and "ensur[ing] that all available documentary evidence in support of each party's position is part of the record." 42 C.F.R. § 405.1853(a).[6] "Such evidence," according to the regulations, "will ordinarily include a position paper from the provider." Id.

Plaintiff admits that "the Board's interpretation of the Agency's regulation is entitled to substantial deference." Pl.'s Opp'n and Reply at 15. The Supreme Court instructs that "the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson, 512 U.S. at 511 (citation and quotation marks omitted). If the Board's Instructions "sensibly conform[] to the purpose and wording of the regulation," the Instructions will be upheld. Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc., 423 U.S. 12, 15 (1975).

---

[6]     Although the exact provisions of this regulation have been amended, the Secretary still requires the Intermediary to perform certain duties in an effort to narrow the issues. C.F.R. § 405.1853(a)

The agency's regulations, while they assign certain responsibilities to the Intermediary, do not exempt the provider from fulfilling any of its obligations set forth in the PRRB Instructions. In fact, for the Intermediary to fulfill its duties, it must have the compliance of the provider, which is what the Instructions seek to ensure. The Intermediary must assemble all "available" evidence, which "ordinarily" includes a position paper from the provider. 42 C.F.R. § 405.1853(a). This language suggests that the provider will have independent obligations to provide such evidence and submit its position paper. In short, the PRRB Instructions requiring the provider to meet certain requirements are not inconsistent with regulations that place affirmative obligations on the Intermediary. Under the regulations, it is critical that both parties participate in the narrowing of the issues that will be before the Board; therefore, the Board's Instructions "sensibly conform" to the regulations' "wording and purpose." See Northern Indiana, 423 U.S. at 15.

**C.    The Board's Refusal to Consider Plaintiff's Motion for Reinstatement Was Not Arbitrary or Capricious.**

Rapid City faxed a copy of its Motion to Reinstate its appeal to the PRRB on December 6, 2006. AR at 10 (cover sheet showing facsimile sent from Rapid City to fax number of PRRB, to the attention of Maureen Sacratini). The Motion had earlier been provided to the Intermediary. AR at 11. In a letter date-stamped December 29, 2006, the Board notified Plaintiff that the faxed

-14-

version of the Motion did not meet procedural requirements.  AR at 8.  The letter informed Rapid City that it had to file a copy of the Motion, "by mail, . . . directly with the Board" if Rapid City wanted to the Board to consider it.  Id.

There is no evidence in the record that Rapid City ever filed its Motion by mail after receiving this letter.  Parties disagree as to whether the Motion was satisfactorily filed with the Board on December 6.  Rapid City insists that the Board rendered an arbitrary and capricious decision in refusing to consider its faxed Motion for Reinstatement.  Pl.'s Reply at 20-21.

The text of the PRRB Instructions sets forth procedures controlling how parties must seek reinstatement of their appeals.  PRRB Instructions at I.C.XIII.[7]  Nowhere in Part I.C.XIII of the Instructions does the PRRB require the provider to file for reinstatement via mail.  However, the Instructions, in setting forth "Board Policies and Procedures for Pursuing an Appeal," provide that "[t]he Board requires a confirmation copy by mail of any documents sent by telephone facsimile."[8]  Id. at I.C.II.

The Board's stated reason for deciding not to consider the Motion is that it was improperly filed.  AR at 8.  In conducting

---

[7]     This is the only section of the Instructions that is cited to in the Board's December 29 letter explaining that the Motion had to be filed by mail.  AR at 8.

[8]     The policy of requiring confirmations via mail is eminently reasonable, given that facsimile transmission is not a totally reliable means of submission.

arbitrary and capricious review, courts are highly deferential to agency decisions, and cautious to "not substitute [their] judgment for that of the agency."  <u>Rural Cellular Ass'n v. FCC</u>, 588 F.3d 1095, 1105 (D.C. Cir. 2009); <u>see also</u> <u>Eagle Broadcasting Group, Ltd. v. FCC</u>, 563 F.3d 543, 551 (D.C. Cir. 2009) (commenting on standard of review applied to arbitrary and capricious claims).

The Board cannot be said to have offered "an explanation for its decision that runs counter to the evidence before the agency," 463 U.S. at 4, and thus cannot be found to be in violation of <u>State Farm</u>.  Instead, it took note that the Motion was not mailed to the PRRB, and explained that faxing the Motion was not an adequate substitute for mailing it.  The letter referenced that more specific guidance was contained in the PRRB Instructions.  <u>Cf.</u> <u>id.</u> ("We will . . . uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal citation and quotation marks omitted).  The letter provided Rapid City an opportunity to properly file its Motion pursuant to those Instructions and the notice contained in the letter.  Rapid City never re-filed.  Therefore, the Board's refusal to consider the Motion was not arbitrary or capricious.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's Motion for Summary Judgment is **denied**.   An order shall issue with this Memorandum Opinion.


February 2, 2010

/s/_____
Gladys Kessler
United States District Judge


**Copies to**: attorneys on record via ECF